IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| FREDDIE L. WATKINS, : | |
|    Plaintiff, : | |
| vs. : | Civil Action No. |
| : | **5:07-CV-437 (CAR)** |
| MICHAEL J. ASTRUE, : | |
| Commissioner of Social Security, : | |
|    Defendant. : | |

**RECOMMENDATION**

The plaintiff herein filed an application for Supplemental Security Income benefits on October 27, 2004. The application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge, which was held on June 7, 2007. On July 13, 2007, the ALJ denied plaintiff's claim. The Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner. The plaintiff subsequently filed an appeal to this court. Jurisdiction arises under 42 U.S.C. § 405(g). All administrative remedies have been exhausted.

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person

would accept the evidence as adequate to support the conclusion at issue. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Richardson v. Perales, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." Bloodsworth, 703 F.2d at 1239. "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." Cornelius, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits. The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education, and residual functional capacity. Ambers v. Heckler, 736 F.2d 1467, 1470-71 (11th Cir.1984). Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age,

education, and work experience.  20 C.F.R. § 404.1520(d).

The ALJ determined that plaintiff had a "severe" impairment of history of past alcohol abuse; alcoholic neuropathy; generalized arthritic aches and pains; borderline IQ; and depression, but that did not prevent plaintiff from being able to perform his past relevant work as a gas station attendant.

## 1.  Listing 12.05C

Plaintiff argues that he should have been found to meet listing 12.05C for mental retardation. Plaintiff's Brief (Pl.'s Br.) at 11. A claimant may satisfy his burden of proving disability if he shows that his impairments meet or equal a listed impairment. See 20 C.F.R. § 416.920(a)(4)(iii), (d); Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). More specifically:

> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings."

Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir 2002) (citations omitted); see 20 C.F.R. §§ 416.925, 416.926; Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987); Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar

3

impairment." Id. at 531. "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Id.

>   Listing 12.05 provides in pertinent part:
>
>   *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
>   The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>   . . .
>   C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. The introductory material to the mental disorders listings clarifies Listing 12.05, stating:

>   The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A.

"To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). Generally, a claimant meets the criteria for presumptive disability under 12.05C when he presents a valid IQ score of 60 through 70 inclusive and when claimant presents evidence of an additional mental or physical impairment

4

significantly affecting claimant's ability to work. Id. at 1219-20 (citing Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). The Eleventh Circuit, however, has recognized that a valid IQ score need not be conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior. Lowery, 979 F.2d at 837 (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986)).

Plaintiff underwent a psychological consultative evaluation performed by Dr. Elizabeth M. Soety, Ph.D., on January 20, 2005 (Tr. 17, 177-80). Dr. Soety noted that Plaintiff appeared mildly depressed and somewhat anxious (Tr. 17, 180). Upon testing, Plaintiff attained a verbal IQ score of 65, performance IQ score of 69, and full scale IQ score of 69, which placed him functioning in the mild range of mental retardation (Tr. 17, 179). However, the ALJ noted, Plaintiff's intellectual abilities more likely fell within the Borderline range of impairment based on his previous occupational functioning and living independence while gainfully employed (Tr. 17-18, 180). The ALJ noted that Plaintiff was able to understand simple instructions but had a great deal of difficulty when tasks became more complex (Tr. 18, 180). The ALJ observed that Plaintiff displayed adequate ability to sustain attention and accomplish simple tasks over an extended period of time (Tr. 18, 180). The ALJ noted that Plaintiff did not appear to be in a great deal of pain by his positioning and movement during the testing (Tr. 18, 180). The ALJ observed that Plaintiff's ability to relate to the public, supervisors, and coworkers was limited by his intellectual abilities (Tr. 18, 180). The ALJ noted that Plaintiff expressed frustration regarding the examiner's inability to prescribe medication and showed little insight into the relationship (Tr. 18, 180). The ALJ noted that Plaintiff's limited comprehension and understanding of the roles and responsibilities of other individuals in the work place may impact his functioning with

others (Tr. 18, 180).

Dr. Soety diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood, history of alcohol abuse, and Borderline Intellectual Functioning (Tr. 18, 180). Dr. Soety did not diagnose Plaintiff with mental retardation (Tr. 180).

Consequently, the ALJ's finding that plaintiff did not meet a listing was based upon substantial evidence.

### 2. *Past Relevant Work*

Plaintiff argues that the ALJ erred by finding that his job as a gas station attendant was past relevant work, because it was performed more than 15 years prior to the ALJ's decision. In this case, the job in question was last performed in February of 1992, 15 years and 5 months prior to the ALJ's decision of July 2007 (Tr. 21).

The regulations state that work performed 15 years before the time the agency is making a determination about disability will "usually" not be relevant. Pl.'s Br. at 15. See 20 C.F.R. § 416.965(a). However, the 15-year period is a guide and a job performed longer than 15-years prior to the decision could still be relevant. See 20 C.F.R. § 416.965(a). The Commissioner notes that the reasoning behind this "15-year guide" is set out in Social Security Ruling (SSR) 82-62, which states, "A gradual change occurs in most jobs in our national economy so that after 15 years it is no long realistic to expect that skills (or proficiencies) and abilities acquired in these jobs continue to apply. The 15-year guide is intended to insure that remote work experience which could not reasonably be expected to be of current relevance is not applied." SSR 82-62, 1982 WL 31386 (S.S.A.); 20 C.F.R. § 416.965(a).

Given the testimony of a vocational expert (Tr. 270-272), it does not appear that the use of

work 15 years and five months was error, especially as the 15 year guideline is exactly that - a guideline.

### 3. *Treating Physicians*

Plaintiff states that the ALJ improperly discounted the opinions of plaintiff's treating providers,

Dr. Wallace and Dr. Parihar.

The Court of Appeals has held that good cause must be shown if the opinion of the treating physician is discounted; a non-examining physician's opinion is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.  See  Broughton v. Heckler, 776 F.2d 960 (11th Cir.1985).  "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986).  Where the medical evidence does not conclusively counter the treating physician's opinion, and no other good cause is presented, the treating physician's opinion cannot be discounted.  Scnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987).  Moreover, the ALJ cannot substitute his opinion for that of a medical expert. Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982).

However, a treating physician's opinion that a plaintiff is disabled or unable to work is not conclusive; the ALJ must make a disability determination based upon the medical findings and other evidence.  Bell v. Bowen, 796 F.2d 1350 (11th Cir. 1990).  The opinion of a physician, even a treating physician, may be discounted when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. See 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-2p.

Plaintiff underwent an internal medicine consultative examination performed by Dr. Stanley Wallace on January 24, 2005 (Tr. 18, 181). The ALJ noted that Plaintiff had a history of heavy alcohol intake for the past 30 years (Tr. 18, 181). Plaintiff had full range of motion of all the joints except the left ankle and right knee (Tr. 18, 183). The ALJ observed that Dr. Wallace opined that there was evidence showing that Plaintiff would have serious difficulty returning to work where squatting, stooping, climbing, and prolonged standing was necessary (Tr. 18, 183). The ALJ also noted that Dr. Wallace diagnosed Plaintiff with past history of alcohol use with sensory neuropathy, degenerative joint disease, and exertional dyspnea, etiology unknown (Tr. 18, 183).

The ALJ noted that Plaintiff's statements about his daily activities showed that Plaintiff is able to do some cleaning such as sweeping and vacuuming (Tr. 19, 244). The ALJ noted that Plaintiff is also able to do dishes, make his bed, and keep his room clean (Tr. 19, 244). The ALJ also observed that Plaintiff is able to mow the lawn occasionally and that Plaintiff picks up aluminum cans for money at the city dump (Tr. 19, 20,178, 246). Plaintiff stated that he makes approximately $40.00 a month at a rate of about 10 cents per pound of cans that he picks up (Tr. 246). The ALJ found that it appeared Plaintiff's activity picking up cans at the city dump reflected a significant amount of bending and squatting to get this amount of cans (Tr. 20). An ALJ may consider whether the applicant's own testimony regarding her daily activities contradicts the treating physician's opinion in determining the weight to afford that opinion. See Phillips v. Barnhart, 357 F.3d 1232, 1241 and n.9 (11th Cir.2004).

Plaintiff also argues that it was error that the ALJ did not discuss Dr. Parihar's finding of cauda equina syndrome. Pl.'s Br. at 17. The ALJ did discuss the medical evidence from Dr.

Parihar, and although the ALJ did not specifically mention cauda equina syndrome, he did note that in a medical statement dated May 6, 2005, Dr. Parihar opined that Plaintiff was suffering from lumbosacral radiculopathy (Tr. 18, 217). The ALJ noted that Dr. Parihar stated that he had severe radicular pain in the lower extremities and was on Analgesics for that problem (Tr. 18, 217). The ALJ noted that Dr. Parihar stated that he was partly incapacitated physically due to pain (Tr. 18, 217).  The Commissioner argues that the ALJ did discuss the medical opinion of Dr. Parihar, even if he did not specifically discuss the diagnosis of cauda equina syndrome.

Cauda Eqina Syndrome has been described as follows:

An extreme version of nerve compression or inflammation is cauda equina syndrome. Cauda equina syndrome is a serious condition caused by compression of the nerves in the lower portion of the spinal canal.... Cauda equina syndrome is considered a surgical emergency because if left untreated it can lead to permanent loss of bowel and bladder control and paralysis of the lower extremities.

"Cauda Equina Syndrome," WebMD Medical Reference from eMedicineHealth.

While the mere diagnosis of a condition does not speak to its severity or show related functional loss (see  Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)), the failure of the ALJ to consider the diagnosis, combined with the other evidence of plaintiff's pain and functional limitations, was not based upon substantial evidence.  While the ALJ is not required to explain every piece of evidence, this is a significant diagnosis that could change the outcome of the decision.

Upon remand, the ALJ should re-examine the reports of Dr. Parihar, contact Dr. Parihar if additional information is necessary in order to determine the effects of the condition, and re-evaluate the remainder of the medical evidence, plaintiff's credibility and residual functional capacity accordingly.

Inasmuch as the Commissioner's final decision in this matter is not supported by substantial evidence, it is the RECOMMENDATION of the undersigned that the Commissioner's decision be **REMANDED** pursuant to Sentence Four of § 405 (g).   Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable C. Ashley Royal, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 18th   day of February, 2009.

//S Richard L. Hodge
RICHARD L. HODGE
msd                                                       UNITED STATES MAGISTRATE JUDGE